UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

3D ENTERPRISES GROUP OF
FLORIDA, INC.,

        Plaintiff,                       Case No.: 8:09-CV-576-T33T BM

and

OCALA RESTAURANT PARTNERS,
INC.,

        Rule 19 Involuntary Plaintiff,

vs.

UNDERWRITERS AT LLOYD'S,
LONDON,

        Defendant.

_____/

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW, the Plaintiff, 3D ENTERPRISES GROUP OF FLORIDA, INC, by and through the undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves this Court to grant Partial Summary Judgment in favor of the Plaintiff on all three counts of the Complaint as amended. [DE-45]. There are no genuine issues of material fact and the Plaintiff is entitled to judgment as a matter of law, leaving only the matter of damages for the jury's determination.

I.

**BACKGROUND**

## A.

## STATEMENT OF THE CASE

This is a cause of action alleging breach of a contract of commercial property insurance. (DE-45, Ex. A). The operative amended complaint states three counts: 1) declaratory judgment; 2) breach of contract; and 3) conversion. (DE-45). The declaratory judgment count seeks a judicial determination that the insurer has waived and is estopped from relying on certain policy conditions and exclusions to deny the claim. The breach of contract action, in turn, seeks the payment of policy benefits to the insured and to compel payment to a third-party beneficiary under the policy. Alternatively, the conversion count seeks the fair market value of property unlawfully seized and sold by the insurer following the loss.

## B.

## STATEMENT OF UNDISPUTED FACTS WITH CITATION TO RECORD

As a preliminary matter, reference to record shall be designated by the electronic document number if filed and the exhibit number as attached to the Plaintiff's separate Notice of Filing Documents in Support of Motion for Summary Judgment.

The Plaintiff, 3D Enterprises (hereinafter 3D) was the owner and operator a Cody's Original Roadhouse Restaurant located in Ocala Florida. (Exhibit 1 – Deposition of Raymond Daher, p. 135). The Plaintiff leased the property, restaurant building, and some miscellaneous restaurant equipment used to operate the Cody's Original Roadhouse Restaurant from involuntary plaintiff, Ocala Restaurant Partners (hereinafter ORP). (Exhibit 2 – ORP Response to Request for Admission, paragraph 3). Ocala Restaurant Partners

maintained an alarm system which was connected to a central station. (Exhibit 2, paragraph 8). Ocala Restaurant Partners owned the property, the building, and some, but not all, of the equipment located in the Cody's Roadhouse Grill. (Exhibit 3 – Deposition of Donald Wilemon, p. 19-20; 23-24). On August 16, 2007, the Cody's Original Roadhouse Restaurant caught fire and burned. (Exhibit 4 – Defendant's Responses to Request for Admissions, paragraph 3).

Prior to the fire, 3D was issued a policy of commercial property insurance protecting Cody's, its building, and business property from loss caused by fire. (DE-45, Ex. A, p. 5,17). 3D never received a complete copy of the policy. (Exhibit 1, p. 17-19, 79) Initially, the policy was issued listing ORP as a simple "loss payee." (DE-45, Ex. A, p.13). Thereafter, and before the fire, Lloyd's issued an additional endorsement to the policy which clearly and unambiguously listed ORP as both a "loss-payee" and "mortgagee." (DE-45, Ex. A, p.13). By its terms, the "mortgagee" endorsement became binding upon 3D, Lloyd's, and ORP on June 13, 2007. (DE-45, Ex. A). The lease agreement between 3D and ORP required that ORP have the full protection of the "mortgagee" loss-payable endorsement on any policy procured by 3D. (Exhibit 2 – ORP Response to Request for Admission, paragraph 3). The endorsement's mortgagee clause provided, in pertinent part, as follows:

> **Mortgageholders**
> b. We will pay for covered loss or damage to buildings or structures to each mortgageholder shown in the Declaration in their order of preference, as interest may appear.
> c. The Mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.
> d. *If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to loss payment . . .*

> e. If we pay the mortgageholder for any losses or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:
> (1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and
> (2) *The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.* At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest, in this event, your mortgage note will be transferred to us and you will pay your remaining mortgage debt to us.

(DE-45, Ex. A, p. 31)(emphasis added).

Following the fire, Lloyd's retained Jack Goldin of the adjusting firm Cramer, Johnson, and Wiggins (CJW) to both adjust and investigate the loss on its behalf. (Exhibit 5 – Defendant's Answers to Plaintiff's Interrogatories, paragraph 6). CJW visited the restaurant for inspection and, thereafter, on September 27, 2007, CJW, on behalf of Lloyds, unilaterally retained an independent salvage consultant named Donald Wilemon (hereinafter Wilemon). (Exhibit 3, p. 50). On October 4, 2007, Wilemon, CJW, and ORP met at the site of the fire for the purpose of preparing an inventory of the business personal property. (Exhibit 3, p. 17-18; 61). At this meeting, CJW provided Wilemon with a list of the business property owned by ORP and a list with business property owned by 3D. (Exhibit 3, p. 19-20; 23-24).

On January 9, 2008, at the direction of CJW, Wilemon loaded all of the equipment belonging to both 3D and ORP for transportation and sale. (Exhibit 3, p. 27-30; 64; Deposition Exhibit 4 – Letter to Goldin). Following CJW's instructions, Wilemon liquidated all of the business personal property for $3,500.00. (Exhibit 3, p. 27-30; 64; Deposition Exhibit 4 – Letter to Goldin). 3D did not authorize the sale of this business property, had no

knowledge of the sale of its business property, and did not consent to such sale. (Exhibit 3, p. 27-30; 64). Neither Wilemon nor CJW contacted 3D with regard to the removal or sale of 3D's business personal property. (Exhibit 3, p. 27-30; 64). Wilemon understood that Lloyd's would be paying the claim in that he had been ordered to salvage and sell the business personal property. (Exhibit 3, p. 54). Despite having authorized the sale of 3D's property on January 9, 2008 without its knowledge or consent, Lloyds sent 3D a letter on January 17, 2008 stating that it was still investigating the claim. (Exhibit 6 – Correspondence dated January 7, 2008). In April of 2008, Wilemon forwarded a check representing the proceeds from the sale of ORP's and 3D's business property to CJW. (Exhibit 3, p. 54). Neither CJW or Lloyd's forwarded the proceeds to 3D or notified 3D that they were in possession of the sale proceeds. (Exhibit 3, p. 54).

On October 22, 2008, Lloyd's denied 3D's claim that it pay all benefits owed to ORP under the policy's "mortgagee" endorsement and further refused to reimbursement 3D for any of the insured business property destroyed in the fire. (Exhibit 7 – Correspondence dated October 22, 2008; DE-52). As to benefits owed to ORP, Lloyd's asserted that ORP was not afforded protection under the "mortgagee" endorsement, although specifically endorsed as a "mortgagee" in the endorsement. (Exhibit 7 – Correspondence dated October 22, 2008). As to benefits owed to 3D, Lloyd's asserted that 3D breached a policy condition by failing to maintain sufficient fire protective safeguards. (Exhibit 7 – Correspondence dated October 22, 2008). The provision cited by Lloyds provides as follows:

> "P-2" Automatic Fire Alarm, protecting the entire building, that is:
> a. Connected to a central station; or
> b. Reporting to a public or private fire alarm system.

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:
2. Failed to maintain any protective safeguard listed in the Schedule above, *and over which you had control*, in complete working order.

(DE-1, Ex. A. Part 2, p. 21)(emphasis added).

Despite denying the claim on October 22, 2008, Lloyds failed to forward any proceeds from the salvage of 3D's business property to 3D until April 6, 2009. (Exhibit 8 – Correspondence dated April 6, 2009). On that date, Lloyd's forwarded 3D two checks for the substantial restaurant equipment which was destroyed in the fire: one for $3,500.00 for the property salvaged and one for $449.49 for interest on the same. (Exhibit 8 – Correspondence dated April 6, 2009). On the matter of recovered property, the policy of insurance provided as follows:

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

(DE-45, Ex. A, p. 28).

## C.

## SUMMARY OF ARGUMENT

### 1.

### DECLARATORY JUDGMENT ACTION

Under the undisputed facts of this case, 3D is entitled to a declaration that its insurer, Lloyds, cannot rely upon the protective safeguard exclusion to deny the claim, as a matter of law for four reasons.

Lloyd's is a surplus lines insurer, as that term is understood under the Florida Insurance Code. As a surplus lines insurer, Lloyd's is statutorily required to provide a copy of any the policy containing all conditions to 3D in order to enforce the protective safeguard condition against the insured. On this record, it is undisputed that Lloyds did not provide a copy of the policy containing the protective safeguard condition to 3D and, as a matter of settled Florida law, Lloyd's cannot enforce this condition. *Lloyds Underwriters at London v. Keystone Equipment Finance Corp.*, 2009 WL 4927917 (Fla. 4th DCA 2009). 3D, therefore, is entitled to a declaration that Lloyd's is prohibited from relying upon the protective safeguard language to deny 3D's claim.

Next, Lloyds has waived and is estopped, as a matter of law, to rely upon the protective safeguard language to deny 3D's claim. Lloyd's committed the following unequivocal acts, all while having knowledge of the alleged protective safeguard provisions, which effectuated a waiver and estoppel under first party insurance jurisprudence: 1) ordering the seizure and sale of the 3D's property without contractual basis; 2) ordering that funds from the sale of 3D's property be provided to Lloyds; 3) retaining the funds from the date of sale of 3D's property until the time of the claim denial; 4) retaining the funds from the sale of 3D's property, after the claim denial; 5) failing to give prompt notice of the recovery of property to 3D, as required by the policy provision; and, 6) failing to give 3D the option to have the property returned, as required by the policy.

As to payment of amounts due under the policy to ORP, Lloyds has waived and is estopped to assert that ORP is not provided coverage by the "mortgagee" endorsement. Before the fire, Lloyds specifically endorsed the policy to list ORP as a "mortgagee" and

both 3D and ORP relied upon that endorsement to their detriment. The policy, as endorsed, is clear and unambiguous. ORP is entitled to the enhanced protection of the "mortgagee" clause and 3D has legal standing as a third-party beneficiary to enforce this provision, under Florida law. Because the clear language of the "mortgagee" endorsement provides that no act of 3D can invalidate payment of benefits to ORP, 3D is entitled to a declaration that, regardless of the application of the protective safeguard provision, ORP must be paid under the policy. *See Johnson v. Life Ins. Co. of Ga.*, 52 So.2d 813, 815 (Fla.1951).

## 2.

## BREACH OF CONTRACT

Partial summary judgment in 3D's favor on any of the declaratory judgment counts necessarily requires the granting of a partial summary judgment on the breach of contract count, leaving the matter of only damages to the jury. Simply, it is 3D's position that Lloyd's wrongfully failed to pay ORP, regardless of the application of the protective safeguard condition, and 3D, when it denied the claim on the basis of the protective safeguards condition, which is not legally available to it, as a matter of law. In addition to the arguments raised in the declaratory judgment section, 3D is entitled to partial summary judgment on the breach of contract count for two other substantive contractual reasons.

First, Lloyds breached the "recovered property" provision of the policy. It is undisputed that, pursuant to the terms of the policy, Lloyds was required to promptly notify 3D of the recovery of the property and then give 3D the option for the return of that recovered property. On this summary judgment record, it is undisputed that Lloyds neither gave prompt notice to 3D or provided 3D with the option for its return. This is a breach of

the contract's express provisions, which entitles 3D to damages for the value of the business property.

In addition, the "recovered property" provision only permits Lloyds to recover property "after loss settlement." The undisputed record establishes that Lloyds actually recovered the property prior to loss settlement, failed to give notice, failed to provide the option for the return of the property, unilaterally ordered the sale of the property, denied the claim, and, nevertheless, retained the funds from the extra-contractual sale of the property. This conduct constitutes a breach of the provisions of the contract for which the plaintiff suffered damages. *See Lloyds Underwriters at London v. Keystone Equipment Finance Corp.*, 2009 WL 4927917 (Fla. 4th DCA 2009).

As an alternative argument, the protective safeguard condition specifically requires that for a violation of the condition to be chargeable to 3D, the fire alarm would have to be one over which 3D had control. The undisputed facts demonstrate that the fire alarm was under ORP's complete control, not 3D's. Accordingly, this provision is contractually unavailable as a defense

## 3.

## CONVERSION

Alternatively, Lloyds converted 3D's property, as a matter of law, when it ordered the property seized and sold, without the plaintiff's knowledge and consent. The tort claim of conversion constitutes the exercise of unlawful control over property to the detriment of the rights of its actual owner. *Gerber Trade Finance, Inc. v. Bayou Dock Seafood Co., Inc.*, 917 So.2d 964 (Fla. 3rd DCA 2005). Lloyd's conduct was also without any legal privilege,

because there was no contractual right to take possession of the property, sell it, or order its disposal.   On the contrary, the policy of insurance provided that Lloyds was required to provide 3D prompt notice and the option to have the property returned.

**D.**

**LEGAL BASIS FOR MOTION AS TO PLAINTIFF'S CLAIM**

The basis of this Motion is that there are no genuine issues of material a fact as to liability for payment, and the Plaintiff is entitled to judgment as a matter of law.   Under Rule 56(e)(2), an interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages.   Fed. R. Civ. Pro. 56.   The insured Plaintiff in this case has standing to enforce the insurance policy's loss-payable clause independently of the loss-payee upon the basis of the insured's right as a third party beneficiary. *Schlehuber v. Norfolk & Dedham Mutual Fire Insurance Co.,* 281 So.2d 373 (Fla. 3rd DCA 1973).   Based on the policy and actions of the Defendant there are no genuine issues of material fact as to the Defendant's liability of coverage and payment to third party beneficiary Ocala.   In addition, the Defendant's actions in salvaging the property without consent of the owner amount to conversion.   Thus, summary judgment should be rendered forthwith in favor of the Plaintiff, leaving the matter of damages to the jury.

**II.**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**A.**

**STANDARD FOR SUMMARY JUDGMENT**

A motion for summary judgment should be granted if material facts, construed in light most favorable to nonmoving party, are not in dispute, and movant is entitled to judgment as matter of law. *In re Taylor*, 196 B.R. 197 (M.D. Fla. 1996). A "material fact" is one that might affect the outcome of the case, and disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). Summary judgment should be granted only when it is clear factually what the truth of the matter is. *Tuley v. Heyd*, 482 F.2d 590 (5th Cir. 1973). Furthermore, summary judgment procedure is properly regarded, not as a disfavored procedural shortcut but, rather, as an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

**B.**

**DEFENDANT'S ACTIONS CONSITUTE WAIVER OF ITS RIGHT TO DENY COVERAGE AND IT IS ESTOPPED FROM DENYING PAYMENT TO THE INSURED OR ORP**

The Defendant in this case is estopped from denying payment to mortgagee ORP and the insured for two reasons. First, the Defendant added ORP as a loss payee and mortgageholder. The Plaintiff relied to its detriment on the security of this payment clause making it inequitable to allow the Defendant to deny payment. Second, the Defendant performed an unequivocal act recognizing coverage of the property at issue when it salvaged the Plaintiff's equipment, received payment for the salvage, and paid the insured for the salvage. The Defendant cannot deny coverage or payment after it has taken steps towards coverage of the property or made payment. As a general rule, acts and conduct of an insurer

after a loss has occurred which are inconsistent with a particular defense, especially when the insured has been induced to act, or act which would lull the insured into believing that he or she is covered, will constitute a waiver of the defense. *General Acc. Fire & Life Assur. Corp. v. Schero*, 151 F.2d 825 (C.C.A. 5th Cir. 1945); *Bonner v. City of Pritehard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc). For these reasons the Defendant breached the policy of insurance and should be estopped from denying payment to ORP as a third party beneficiary and the insured.

1.

## DEFENDANT IS ESTOPPED FROM DENYING PAYMENT TO ORP BECAUSE IT APPROVED AND ADDED THE CLAUSES NAMING ORP AS LOSS PAYEE AND MORTGAGEHOLDER.

The law does not favor an insurance company seeking to forfeit rights under insurance policy, especially when the event giving rise to insurer's liability has occurred. *Johnson v. Life Ins. Co. of Ga.*, 52 So.2d 813, 815 (Fla. 1951). Under Florida law, an insurer can be *estopped by its conduct* from seeking a forfeiture of a policy. *Lloyds Underwriters at London v. Keystone Equipment Finance Corp.*, 2009 WL 4927917 (Fla. 4th DCA 2009)(emphasis added). An insurance company may waive the right to forfeit, and the intention to do so, may be inferred from deliberate disregard of information sufficient to excite attention and call for inquiry as to existence of facts by reason of which forfeiture could be declared. *Johnson,* 52 So.2d at 815. In addition, constructive notice may also be deemed the legal equivalent of knowledge in the sense that circumstances putting the insurer on notice may not be deliberately disregarded. *Id.*

Estoppel can only be invoked against an insurer when its conduct has been such as to induce action in reliance upon it. *Reliance Mutual Life Insurance Company of Illinois v. Booher*, 166 So.2d 222 (Fla. 2nd DCA 1964). Where insurer or its agent misrepresents, even though innocently, the coverage of insurance contract, or exclusions therefrom, to an insured before or at inception of contract, and insured reasonably relies thereupon to his ultimate detriment, insurer is estopped to deny coverage after loss or risk from peril not actually covered by terms of policy. *Kramer v. United Services Auto. Ass'n*, 436 So.2d 935 (Fla. 4th DCA 1983). For example, insurer could not issue policy on vacant building and then argue that coverage was excluded because building was vacant. *Poland v. Phillips* 371 So.2d 1053 (Fla. 3d DCA 1979). Another example is that the insurer is estopped from denying coverage based on the failure of a warranty when it issued a policy of insurance but failed to provide the insured with a copy. *Lloyds Underwriters at London v. Keystone Equipment Finance Corp.*, 2009 WL 4927917 (Fla. 4th DCA 2009). The general rule in applying equitable estoppel to insurance contracts provides that estoppel may be used defensively to prevent a forfeiture of insurance coverage, but not affirmatively to create or extend coverage. *Six L's Packing Co. v. Florida Farm Bureau Mutual Insurance Co.*, 268 So.2d 560 (Fla. 4th DCA 1972), *cert. discharged,* 276 So.2d 37 (Fla.1973). "[E]quitable estoppel is not designed to aid a litigant in gaining something, but only in preventing a loss. In other words, it will not avail in offense, but only in defense." *Kerivan v. Fogal,* 22 So.2d 584, 586 (1945).

Here, the Plaintiff asserts equitable estoppel as a defense to any attempt by the Defendant to justify its denial of payment to mortgagee ORP. In accordance with the *Johnson* ruling, because the Defendant endorsed the addition of ORP as a mortgagee and loss

payee, it has waived the right to forfeit coverage. The Defendant had actual and constructive notice of any possible deficiency in the language of the policy which might exclude ORP as mortgagee. Following the reasoning in *Poland*, the Defendant cannot add ORP as a mortgagee then argue that payment is excluded because ORP is not a mortgagee. The Defendant cannot deny the clear language of the policy and any attempt to do so should be prevented. Simply, the insurer's act of adding ORP as a loss payee and a mortgagee now prevents the insurer from denying such fact or payment related thereto.

The Plaintiff relied to its detriment upon the authority of the insurer to modify and authenticate the policy. Obviously in seeking to add ORP as a mortgagee the Plaintiff wanted to protect its interest and liability in the property. The loss payee clause is arguably one of the most important clauses in a policy from the insured's perspective. This is the clause which will ultimately mitigate the risk that necessitates insurance. Here, the Plaintiff sought to reduce its risk of loss not only for the cost of the property but specifically for the monetary obligation owed to ORP. Because the Plaintiff is liable for any debt owed to ORP regardless of the condition of the property, the policy of insurance permitted the Plaintiff to reduce its risk of loss. The Plaintiff relied on the language provided by the insurer in the policy, and because the language provided for payment to the mortgagee, the Plaintiff failed to seek alternative coverage, which amounts to detrimental reliance. Thus, the Defendant should be estopped from denying payment to ORP.

**2.**

**DEFENDANT WAIVED ITS RIGHT TO THE DENY THE CLAIM OR PAYMENT TO ORP AND THE PLAINTIFF BECAUSE SEIZURE OF PROPERTY AND PAYMENT ARE UNEQUIVOCAL ACTS INCONSISTENT WITH FORFEITURE OF COVERAGE.**

Waiver may be asserted and relied upon in law as well as in equity, and when one has waived denial he is estopped from further reliance upon it. *Enfinger v. Order of United Commercial Travelers of America*, 156 So.2d 38 (Fla. 1st DCA 1963). Under Florida law, an insurer may be *estopped by its conduct* from seeking denial of a claim. *Lloyds Underwriters at London v. Keystone Equipment Finance Corp.*, 2009 WL 4927917 (Fla. 4th DCA 2009)(emphasis added). When an insurer has knowledge of the existence of facts justifying denial, *any unequivocal act* which recognizes continued coverage or which is wholly inconsistent with denial will constitute waiver. *Johnson v. Life Ins. Co. of Georgia*, 52 So.2d 813, 815 (Fla.1951)(emphasis added). Furthermore, the making of partial payments necessarily recognizes that liability and has been deemed to constitute waiver of any condition on which nonliability could be predicated. *General Acc. Fire & Life Assur. Corp. v. Schero*, 151 F.2d 825 (C.C.A. 5th Cir. 1945); *Bonner v. City of Pritehard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

In *Enfinger*, the court held that receipt and retention of payments for several months after the insurer had knowledge of the insured's death was a waiver by the insurer to deny the insured's rights. *Enfinger*, 156 So.2d at 40. The insurance policy contained a clause which stated that the time at which the policy was effective began at noon on the day the certificate is issued. *Id.* The insured died prior to effective date, but the insurer was found to have waived any right of denial because it acted in accordance with continued coverage by accepting and retaining payment for policy coverage. *Id.* at 43.

The course of action taken in *Enfinger* included the retention of the insured's payment for a long period (five months) after the insured's death, and was only returned after

the insured filed suit. The court found in favor of the insured with the opinion that "[t]o permit such a contention to prevail would be to chloroform the element of right and justice on which all such controversies rest and glorify any technical defense offered to defeat it." *Enfinger* 156 So.2d at 44 (quoting Justice Terrell in *Lightsey v. Lightsey*, 150 Fla. 664, 8 So.2d 399, 400 (1942).

Here, the facts are similar to *Enfinger*, the Defendant acted in accordance with continued coverage by salvaging the Plaintiff's property and retaining proceeds from said salvage until after commencement of this suit. In addition, the Defendant actually issued payment to the insured for the salvage proceeds. Plaintiff's loss occurred in August 2007, and then four months later the Defendant/insurer authorized removal from the property all industrial restaurant equipment. The Defendant authorized the removal for salvage purposes, even though the policy did not provide for such measures. It was then ten months later that the Plaintiff received a letter from Defendant denying coverage under the policy because of the alleged inadequate fire detection system used in the building, which then required Plaintiff to file this suit. Shortly thereafter, the Defendant issued a check to the Plaintiff for the value of the salvaged property. These actions are clearly inconsistent with a good faith denial of a claim and constitute waiver of any such denial.

The Defendant had ample time to determine whether the loss was covered under the policy, given that the denial was more than a year after the fire occurred. The delay in denial, the intermittent salvage, and the subsequent payment, amount to a course of action that is not only inconsistent with forfeiture but also led the Plaintiff to believe that the claim was covered. Meanwhile, the Defendant retained the Plaintiff's payment for coverage and

the proceeds from the salvaged property. After acting in accordance with coverage, the Defendant then denied coverage based on an alleged technical deficiency in the Plaintiff's method of fire protection. To permit the Defendant's denial under these circumstances would, as described by Justice Terrell in *Enfinger*, amount to a glorification of a technical defense which results in the death of justice. Therefore, the Defendant waived any right of forfeiture and breached the contract by denying payment. The Plaintiff is now entitled to judgment as a matter of law.

### 3.

**DEFENDANT FURTHER WAIVED ITS RIGHT TO THE DENY CLAIM OR PAYMENT TO ORP AND THE PLAINTIFF BECAUSE THE INSURANCE COMPANY FAILED TO PROVIDE A COPY OF THE POLICY THAT INCLUDED THE EXCLUSIONARY CLAUSE RELIED UPON BY THE DEFENDANT.**

An insurer is estopped from denying coverage based on the failure of a warranty when it issued a policy of insurance but failed to provide the insured with a copy. *Lloyds Underwriters at London v. Keystone Equipment Finance Corp.*, 2009 WL 4927917 (Fla. 4th DCA 2009). The Plaintiff insured *never received* a policy of insurance with a provision requiring the insured to have certain protective safeguards. Because the insurance company failed to provide notice to the insured of any duty to maintain a fire alarm system, the provision cannot be relied upon in denying payment. The Defendant is estopped from asserting the provision as a defense and summary judgment is proper.

### C.

### POLICY LANGUAGE PREVENTS EXCLUSION DEFENSE

The policy of insurance at issue in this case contains three important clauses which are the basis for this Motion for Summary Judgment. First the loss payee clause provides

that the insurer will "[p]ay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear." (DE-45, p. 13). Second, the mortgageholders clause provides that "[i]f we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to loss payment . . ." (DE-45, p. 31). ORP was named by the insurer as both a loss payee and a mortgagee under this same policy of insurance. Therefore, these clauses create an undisputable right of the mortgagee, ORP, to collect payment for losses incurred. Finally, the condition requiring an automatic fire alarm is the basis for the insurer's denial. However, ORP maintained a security system over which the Plaintiff had no control. Therefore, the exclusion does not apply in this case and the Plaintiff is entitled to coverage.

1.

**THE PLAINTIFF COMPLIED WITH THE ALARM CONDITION AS PROVIDED BY THE LANGUAGE OF THE POLICY, AND THE DEFENDANT WRONGFULLY DENIED THE CLAIM BY FAILING TO SHOW NON-COMPLIANCE.**

Under Florida law, insurance contracts are to be construed in a manner that is "reasonable, practical, sensible, and just." *Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.*, 874 So.2d 26, 29 (Fla. 2d DCA 2004). Terms used in a policy are to be given their plain and ordinary meaning and read in light of the skill and experience of ordinary people. *Bethel v. Sec. Nat'l Ins. Co.*, 949 So.2d 219, 222 (Fla. 3d DCA 2006). Insurance policies will not be construed to reach an absurd result. *Deni Assocs. of Fla. v. State Farm Fire & Cas. Ins. Co.*, 711 So.2d 1135, 1140 (Fla. 1998).

Provisions excluding or limiting the insurer's liability are construed more strictly than provisions that provide coverage. *Doctors Co. v. Health Mgmt. Assocs., Inc.*, 943 So.2d 807,

809 (Fla. 2d DCA 2006); *Purrelli v. State Farm Fire & Cas. Co.*, 698 So.2d 618, 620 (Fla. 2d DCA 1997). If the provisions that limit or exclude liability are reasonably susceptible to more than one reasonable meaning, they are ambiguous and to be construed in favor of the insured. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 166 (Fla. 2003); *Doctors Co.*, 943 So.2d at 809; *Deni*, 711 So.2d at 1138. This rule, however, applies only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction. *Swire Pac. Holdings, Inc.*, 845 So.2d at 165. In construing an insurance policy, courts are to read the policy as a whole, endeavoring to give contract provisions their full meaning and operative effect. *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000). A single policy provision should be construed according to the entirety of its terms as set forth in the policy and not in isolation. *Swire Pac. Holdings, Inc.*, 845 So.2d at 166.

Here, the Defendant relies on an exclusion clause for its denial of payment. Specifically, the Defendant asserts as a defense the provision of the policy that allows for denial of payment if the insured fails to maintain the protective safeguard over which the insured had control. The required protective safeguard is an automatic fire alarm connected to a central station or reports to a public or private fire alarm station. As required by law this clause must be strictly construed against the insurer and in favor of the insured. The policy only allows for exclusion if the insured had control over the fire alarm. In this case, *ORP had control over the alarm system*, not the insured. Furthermore, ORP *admitted to maintaining an alarm system*. The Defendant failed to show how this alarm does not fit within the conditions of the policy. It is the insurer's burden to show that the loss is

excluded. *Warth v. State Farm Fire and Cas. Co.*, 695 So. 2d 906 (Fla. 2d DCA 1997). Therefore, the Plaintiff complied with the policy condition and the Defendant wrongfully denied the claim.

**2.**

### REGARDLESS OF WHETHER THE INSURED COMPLIED WITH THE POLICY CONDITIONS, THE LOSS PAYEE AND MORTGAGEHOLDER CLAUSES REQUIRE THE INSURER TO PAY FOR A LOSS DESPITE THE ACTS OF THE INSURED.

Under Florida law, when a mortgagor procures an insurance policy pursuant to an agreement to keep property covered by insurance against loss by fire or other casualty in an amount sufficient to protect mortgagee's interest, mortgagee has equitable lien on insurance fund. *Paskow v. Calvert Fire Ins. Co.*, 579 F.2d 949 (Fla. 5th DCA 1978). If a mortgagor covenants to protect his mortgagee the latter thereby is clothed with a lien on the policy to the extent of the mortgagee's interest, whether the policy carried a loss payable clause or not. *Sumlin v. Colonial Fire Underwriters Branch of Nat. Fire Ins. Co. of Hartford, Conn.*, 158 Fla. 95, 98, 27 So.2d 730, 731 (Fla.1946). Thus, by law, the mortgagee has a legal equitable right to payment for lost property. Here, ORP, as mortgagee, has clear legal rights to payment of loss, and the Plaintiff is enforcing such right.

"A loss payable clause is one method by which a lienholder or mortgagee protects its property interest. Generally, two types of loss payable clauses exist and are often referred to as (1) an open loss payable clause, and (2) a union, standard or New York clause." *Progressive Am. Ins. Co. v. Florida Bank at Daytona Beach*, 452 So.2d 42, 44 (Fla. 5th DCA 1984). An "open loss payable clause simply states that 'loss, if any, is payable to B. as his interest shall appear', or uses other equivalent words, merely identifying the person who may

collect the proceeds." 5A Appleman, *Insurance Law and Practice,* § 3401 (1970); *see DeMay v. Dependable Ins. Co.*, 638 So.2d 96 (Fla. 2d DCA 1994); *Independent Fire Ins. Co. v. NCNB Nat. Bank of Florida*, 517 So.2d 59 (Fla. 1st DCA 1987). A union, standard, or New York clause, on the other hand, provides, in addition to the above quoted provision, language to the effect that "the owner/mortgagor's acts or neglect will not invalidate the insurance provided that if the owner/mortgagor fails to pay premiums due, the lienholder/mortgagee shall on demand pay the premiums." *Progressive Am. Ins. Co.*, 452 So.2d at 44; *see, e.g., Independent Fire Ins. Co.*, 517 So.2d at 61 n. 1; Appleman, *supra,* § 3401. Here, both types of loss-payee clauses are included in the policy. However, because the policy provides a loss-payee clause of the standard type, which creates a separate contract, then the mortgagee is freed from policy defenses which the insurer might have against the mortgagor.

Where an insurance policy contains a standard clause agreeing to pay the amount thereof to the mortgagee as his interest may appear, and that such interest may not be invalidated by any act of the mortgagor, such clause gives to the mortgagee a separate contractual status toward the insurer, so that he can recover the amount under conditions that would defeat a recovery by the mortgagor. *Glens Falls Ins. Co. v. Porter*, 44 Fla. 568, 33 So. 473 (Fla.1902). The court in *Porter* interpreted a policy clause which provided that "on condition that no subrogation should impair the right of the mortgagee to recover the full amount of her claim." *Id.* In the same case, the insured failed to timely provide a sworn statement of loss to the insurer. *Id.* at 473. But, under a standard clause, owner mortgagor's acts or neglect will not invalidate insurance, and lienholder mortgagee is freed from policy

defenses which insured might have against owner mortgagor. *Progressive American Ins. Co. v. Florida Bank at Daytona*, 452 So.2d 42 (Fla. 5th DCA 1984).

Here, the Defendant/insurer has denied the mortgagholder payment on the grounds that the insured allegedly failed to install an adequate fire alarm. However, the policy provides that the mortgageholder maintains rights *even if the insured does not comply with the terms of the policy*. The insurer is attempting to use the defense of inadequate fire detection as a means for denying all payments. But, the insurer is prohibited from doing so by the language of the policy and by the Supreme Court of Florida ruling on this exact policy language. Therefore, following *Porter* and *Progressive,* this Court should deny the insurer's defense against the mortgagee even if such defense may be used against the insured. Without defense, the insurer must pay ORP for the loss under the terms of the policy.

**D.**

**REMOVAL OF THE PLAINTIFF'S PROPERTY WITHOUT CONSENT AND WITHOUT THE INTENT OF PAYING THE CLAIM CONSTITUTES CONVERSION AND BREACH OF CONTRACT**

On January 9, 2008, equipment was removed for salvage at the direction of the Defendant, Underwriter's and without the consent of the insured, Enterprises. The Defendant never informed the Plaintiff of its rights or duties under the policy in relation to salvaging equipment. The subject policy of insurance provides the following provision for recovery of property:

> 5. Recovered Property
> If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

(DE-45, Ex. A, p. 28).

The tort claim of conversion constitutes the exercise of unlawful control over property to the detriment of the rights of its actual owner. *Gerber Trade Finance, Inc. v. Bayou Dock Seafood Co., Inc.*, 917 So.2d 964 (Fla. 3rd DCA 2005). "Conversion" is an act of dominion wrongfully asserted over, and inconsistent with, another's possessory rights in personal property. *Joseph v. Chanin*, 940 So.2d 483 (Fla. 4th DCA 2006).

Lloyds converted 3D's property, as a matter of law, when it ordered the property seized and sold, without the plaintiff's knowledge and consent. The tort claim of conversion constitutes the exercise of unlawful control over property to the detriment of the rights of its actual owner. *Gerber Trade Finance, Inc. v. Bayou Dock Seafood Co., Inc.*, 917 So.2d 964 (Fla. 3rd DCA 2005). Lloyd's conduct was also without any legal privilege, because there was no contractual right to take possession of the property, sell it, or order its disposal. On the contrary, the policy of insurance provided that Lloyds was required to provide 3D prompt notice and the option to have the property returned, yet the insurer failed to do so. Therefore, the Plaintiff is entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant this Motion for Partial Summary Judgment leaving open only the issue of damages.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of October, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notice of

electronic filing to the following:   Melissa M. Simms, Esq. and Kevin J. D'Espies, Esq.  I

further certify that I mailed the foregoing document and the notice of electronic filing by

first-class mail to the following non-CM/ECF participants:  none.

/s/Michael V. Laurato, Esquire
MICHAEL V. LAURATO, ESQ.
Florida Bar No.: 181447
AUSTIN & LAURATO, P.A.
1902 W. Cass Street
Tampa, Florida 33606
(813)258-0624
(813)258-4625 Facsimile
mlaurato@austinlaurato.com
Attorney for Plaintiff
TRIAL COUNSEL